UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MATTHEW F.,

      **Plaintiff,**

      v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      **Defendant.**

Case No. 3:20-cv-15564
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Matthew F. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.     PROCEDURAL HISTORY**

On April 5, 2017, Plaintiff filed his application for benefits, alleging that he has been disabled since March 31, 2016. R. 144, 160, 251–57. The application was denied initially and upon reconsideration. R. 161–66, 168–70. Plaintiff sought a *de novo* hearing before an

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

administrative law judge. R. 171–74. Administrative Law Judge ("ALJ") Trina Moore held hearings on August 1, 2019, and December 11, 2019; Plaintiff, who was represented by counsel, appeared and testified at both hearings, as did a vocational expert. R. 36–74 (transcript of hearing conducted on December 11, 2019), 75–127 (transcript of hearing conducted on August 1, 2019). In a decision dated January 9, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 31, 2016, Plaintiff's alleged disability onset date, through the date of that decision. R. 13–29. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 15, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 11, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 12.[2] On the same day, the case was reassigned to the undersigned. ECF No. 13. The matter is ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

---

[2] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s]he must give some indication of the evidence which [s]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 33 years old on his alleged disability onset. R. 28. He meets the insured status requirements of the Social Security Act through December 31, 2022. R. 15. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between March 31, 2016, his alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: post-concussion syndrome; traumatic brain injury; generalized anxiety disorder; major depressive disorder; post-traumatic stress disorder ("PTSD"); and somatic symptom disorder. R. 16. The ALJ also found that Plaintiff's diagnosed bilateral tinnitus and sensorineural hearing loss in the left ear, with unrestricted hearing on the contralateral side and mild sensorineural hearing loss of the left ear, and cervical strain were not severe impairments. R. 16–17. The ALJ also noted that Plaintiff's "insomnia was associated with anxiety (5F/101; 23F/24). Due to the overlapping nature of the claimant's insomnia with his generalized anxiety disorder, the undersigned has considered his insomnia as a symptom in the consideration of the claimant's mental health impairments below, rather than an independent impairment." R. 17 (noting further that, "[e]ven so, it is noted that the claimant's sleep patterns improved with medication").

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of

7

impairments that met or medically equaled the severity of any Listing. R. 17–19.

At step four, the ALJ found that Plaintiff had the RFC to perform full range of work at all exertional levels subject to certain nonexertional limitations. R. 19–28. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a waste collector. R. 27 – 28.

The ALJ also went on to make the alternative finding at step five that a significant number of jobs–*i.e.*, approximately 130,000 jobs as a janitor; approximately 558,00 jobs as a hand packager; and approximately 292,000 jobs as a laundry worker–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 28–29. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 31, 2016, his alleged disability onset date, through the date of the decision. R. 29.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 19. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 18.

## VI.   DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ found "persuasive" the opinions of the state agency reviewing consultants yet failed to include all their limitations and failed to explain this

omission, resulting in a flawed RFC determination and rendering the determination unreviewable. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 23–25; *Plaintiff's Reply Brief*, ECF No. 19, pp. 3–5. This Court agrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[3] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all

---

[3] As previously noted, Plaintiff's claim was filed on April 5, 2017.

medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2).

The applicable regulations further require the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). "Specifically, the ALJ must explain how [she] considered the 'supportability' and 'consistency'

factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how [she] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

In addition, a claimant's RFC is the most the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, at step four of the sequential evaluation process, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to the following nonexertional limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: *The claimant could perform simple routine tasks with no tandem work or assembly line-pace*

11

> work. The claimant could have occasional interaction with coworkers and supervisors. The claimant could not perform constant reading in an office setting, but could perform occasional reading.

R. 19 (emphasis added).

In making this determination, the ALJ specifically considered the opinions of the state agency reviewing consultants. R. 26. David L. Biscardi, Ph.D, conducted an initial review of Plaintiff's medical record for the state agency on August 22, 2017, R. 128–43, and opined, *inter alia*, that Plaintiff would have moderate difficulties in maintaining social functioning. R. 140. He specifically opined that Plaintiff was moderately limited in his abilities to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and adhere to basic standards of cleanliness. *Id*. Under the heading, "MRFC – Additional Explanation[,]" Dr. Biscardi explained his opinions: "Clmt retains the capacity to understand, remember, carry out and sustain performance of 1-3 step tasks (but would become overwhelmed if the procedures were more complicated), complete a normal workday, *interact briefly/superficially* with coworkers/ supervisors and adapt to changes/stressors associated with simple routine competitive work activities." R. 141 (emphasis added).

Adalisse Borges, Ph.D., reviewed Plaintiff's medical record for the state agency upon reconsideration on December 14, 2016. R. 145–59. Dr. Borges agreed with Dr. Biscardi that, *inter alia*, Plaintiff had moderate difficulties in maintaining social functioning and with moderate limitations in his abilities to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate

behavior and adhere to basic standards of cleanliness. R. 157. She also affirmed Dr. Biscardi's mental RFC, including the opinion that Plaintiff could "*interact briefly/superficially* with coworkers/supervisors[.]" R. 156 (emphasis added).

In crafting Plaintiff's RFC, the ALJ found these state agency opinions "persuasive[,]" explaining as follows:

> Disability Determination Services consultants David L. Biscardi, Ph.D., and Adalisse Borges, Ph.D., concluded that the claimant could understand, remember, and carry out and sustain performance of one-to-three step tasks (but would become overwhelmed if the procedures were more complicated), complete a normal workday, *interact briefly/superficially with coworkers and supervisors*, and adapt to changes and stressors associated with simple routine competitive work activities (1A/11, 14; 3A/9-10, 12). *This opinion is persuasive because it is consistent with the evidence in the record.* For example, the claimant had signs of slowed processing and retrieval (E.g., 4F/30-31; 22F/10). However, formal testing indicated that the claimant did have strengths in working memory, retentive memory, simple motor speed, and sustained attention (4F/31; 5F/90). Further, the claimant was more easily irritable and he had a lower frustration tolerance (E.g., 4F/23; 5F/88-89; 6F/7; 22F/16). However, he could maintain a normal and appropriate mood, affect, and demeanor (E.g., 1F/4; 5F/67, 101; 6F/2; 10F/4; 18F/5; 23F/7). *This opinion is also persuasive because it is supported by a thorough review of the claimant's medical records.* Although neither Dr. Biscardi nor Dr. Borges were able to review the entirety of the claimant's medical records, this opinion remains consistent with the evidence and the claimant's limited treatment. For example, [he] had a grossly normal mental status examination during October of 2018 (34F/2).

R. 26 (emphasis added).

Plaintiff argues, *inter alia*, that although the ALJ found the state agency opinions to be persuasive because they were consistent with and supported by the record evidence, the ALJ nevertheless failed to include all the limitations articulated by these experts and failed to explain why she did not include all of the limitations in the RFC determination. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 23–25. Plaintiff specifically contends that, although Dr. Biscardi and Dr. Borges opined that Plaintiff could, *inter alia*, have only "brief and superficial" interaction

13

with supervisors and coworkers, the RFC limits Plaintiff to only "occasional interaction" with supervisors and coworkers. *Id*. at 24.

The Acting Commissioner agrees with Plaintiff that the ALJ found persuasive the state agency opinion that Plaintiff could interact only briefly and superficially with coworkers and supervisors, but argues that the ALJ need not have precisely adopted this exact language and that she properly accounted for this limitation in the RFC by limiting Plaintiff to "work with only simple, routine tasks; no tandem work or assembly-line pace work; occasional interaction with coworkers and the supervisors; and no constant reading in an office setting, but the ability to perform occasional reading[.]" *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, p. 27 (citing R. 19). In reply, Plaintiff insists that there is a qualitative difference between a limitation to "superficial" interaction and a limitation to "occasional" interaction. *Plaintiff's Reply Brief*, ECF No. 19, pp. 3–4. While Plaintiff agrees that the ALJ was not required to adopt, verbatim, the language used by the state agency experts, Plaintiff contends that the ALJ was nevertheless required to explain her decision to exclude certain terms used by those experts after having found their opinions to be persuasive. *Id*. at 3–5.

Plaintiff's arguments are well taken. The Acting Commissioner offers no authority for or evidence supporting her assertion that limitations to "work with only simple, routine tasks; no tandem work or assembly-line pace work; occasional interaction with coworkers and the supervisors; and no constant reading in an office setting, but the ability to perform occasional reading" accommodates a limitation of only brief and superficial interaction with coworkers and supervisors. *See Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, p. 27. Moreover, the ALJ failed to explain that the limitations actually included in the RFC also accommodated the state agency experts' limitation to brief and superficial interaction with

14

coworkers and supervisors. *See* R. 13–29. Based on this record, the Court declines to accept the Acting Commissioner's conclusory and *post hoc* rationalization. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district court should not substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations omitted).

Although neither party cites to legal authority within the Third Circuit, and the undersigned is unaware of any such authority on this point, other courts considering this issue have determined that the term "occasional," which refers to the frequency of the interaction, is not the equivalent of the term "brief and superficial," which refers to the quality of the interaction:

> Social Security Ruling 83–10 defines "occasionally" as "occurring from very little up to one-third of the time." 1983 WL 31251, at *5 (S.S.A. 1983). Logically, "occasional" goes to the frequency of interaction. *See id*. As to "superficial," there is no such definition within Social Security Ruling 83-10. However, "superficial" interactions describe the degree and the extent of interaction, because "[e]ven a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions." *Sanders v. Astrue*, 2012 WL 1657922, at *12 (D. Minn. Apr. 17, 2012). The Court agrees that "superficial" aptly describes the quality of interaction. *See Wartak v. Colvin*, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016) (concluding that "[o]ccasional contact" goes to the quantity of time spent with the individuals, whereas "superficial contact" goes to the quality of the interactions.); *Sanders*, 2012 WL 1657922, at *12 (distinguishing "occasional" interaction and "superficial" interaction because even a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions); *Eveland v. Berryhill*, 2017 WL 3600387, at *4 (N.D. Ind. Aug. 22, 2017) (finding that the ALJ erred when the ALJ limited the plaintiff to "occasional" contact with

>  coworkers and supervisors when the expert opined that the plaintiff could engage in "superficial" contact on an "ongoing basis").

*Greene v. Saul*, No. 3:19-CV-00687-JD, 2020 WL 4593331, at *4 (N.D. Ind. Aug. 11, 2020); *see also Jackson v. Kijakazi*, No. CIV-20-321-SPS, 2022 WL 565584, at *4 (E.D. Okla. Feb. 24, 2022) ("'Occasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interaction.") (cleaned up); *Danielson v. Comm'r of Soc. Sec.*, No. 3:18-CV-84, 2019 WL 1760071, at *4 (S.D. Ohio Apr. 22, 2019), *report and recommendation adopted*, No. 3:18-CV-84, 2019 WL 2011077 (S.D. Ohio May 7, 2019) ("However, occasional and superficial are not coterminous. Instead, '[o]ccasional contact' goes to the quantity of time spent with [ ] individuals, whereas 'superficial contact' goes to the quality of the interactions.") (internal quotation marks and citations omitted)); *Midlam v. Berryhill*, No. C17-5650, 2018 WL 2932134, at *2 (W.D. Wash. June 12, 2018) (finding, *inter alia*, that "[o]ccasional contact measures the frequency with which one comes into contact with another. It does not measure depth of contact, meaning whether the contact is superficial or not" and remanding action); *Oakley v. Colvin*, No. 15-CV-644, 2016 WL 4272136, at *9 (S.D. Ill. Aug. 15, 2016) ("Plaintiff argues that the limitation to occasional contact does not adequately capture Dr. Cesare's opinion that she should be limited to only superficial contact. The Court agrees. Occasional describes frequency of interaction, while superficial describes intensity or quality of interaction. They are not the same thing."). This Court finds the reasoning of these cases, which relies on the plain meaning of each word, persuasive. *Cf. Robinson v. Astrue*, No. CIV.A. 07-1825, 2008 WL 5046337, at *6 (D.N.J. Nov. 21, 2008) (affirming where a doctor's use of the phrase "at this time" "must not be misconstrued to refer to the entire period of time Plaintiff was treated by Dr. Ruoff. The ALJ noted this 'evaluation was not given retrospective effect.' . . . This

Court finds no basis to suggest intent to the contrary and defers to the plain meaning of the phrase").

Having found that a limitation for "occasional" interaction is the not the same as a limitation for "superficial contact, it is unclear to the Court why the ALJ, having found persuasive the state agency reviewing consultants' limitation that Plaintiff could, *inter alia*, "interact briefly/superficially with coworkers and supervisors," did not include any such limitation in the RFC. R. 19, 26. Moreover, the ALJ offered no explanation why she appears to have rejected this limitation. R. 13–29. This omission and failure to explain take on even greater significance when one considers that the vocational expert, upon whose testimony the ALJ relied, was asked to assume a claimant who is limited only in his ability to occasionally interact with coworkers and supervisors. R. 27–29, 62–63. Therefore, the ALJ's omission and failure in this regard cannot be viewed as harmless. *See Jackson*, 2022 WL 565584, at *4 ("This error raises questions as to the claimant's RFC and is not harmless because it brings into question the step five findings[.]"); *Wood v. Comm'r of Soc. Sec.*, No. 3:18-CV-76, 2019 WL 1614591, at *3 (S.D. Ohio Apr. 16, 2019), *report and recommendation adopted*, No. 3:18-CV-76, 2019 WL 1958663 (S.D. Ohio May 2, 2019) ("In finding Plaintiff not disabled, the ALJ relied on responses to hypotheticals he posed to the Vocational Expert . . . that only limited an individual to 'occasional contact.' . . . Therefore, the ALJ failed to meet his burden at Step Five because the Court cannot discern whether the additional limitation -- to 'superficial contact -- would preclude substantial gainful employment in the national economy."); *Eveland v. Beryhill*, No. 2:16-CV-203, 2017 WL 3600387, at *5 (N.D. Ind. Aug. 22, 2017) ("This error is compounded because the hypotheticals to the [vocational expert] did not include any limitation to 'superficial interaction' with supervisors and coworkers.") (citations omitted). Based on this record, the Court cannot

17

conclude that this error was harmless or that substantial evidence supports the ALJ's decision. This Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of this issue.[4]

## V.     CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  May 6, 2022                                         *s/Norah McCann King*
                                                          NORAH McCANN KING
                                                          UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the state agency reviewing consultants' opinions and Plaintiff's RFC, the Court does not consider those claims.